JUAN PASSALACQUA PALMIERI, Plaintiff and Appellee, *v.* HEIRS OF ANTONIO PASSALACQUA, ETC., ET AL., Defendants and Appellants. JUAN PASSALACQUA PALMIERI, Plaintiff and Appellee, *v.* LUIS PASSALACQUA PALMIERI, ETC., ET AL., Defendants and the former Appellant.

Nos. 415, 416. Decided March 4, 1963.

558

*J. Pedro Miranda* for appellant Luis Passalacqua Palmieri. *Jorge L. Córdova, Carlos Cebollero, Jorge L. Córdova, Jr.,* for appellants Heirs of Antonio Passalacqua, etc., *et al. Santiago Polanco Abreu* for appellee.

Division composed of Mr. Justice Blanco Lugo, as Chief Judge of Division, pro-tempore, Mr. Justice Rigau, and Mr. Justice Dávila.

MR. JUSTICE BLANCO LUGO delivered the opinion of the Court.

The origin of the community of property sought to be divided by means of the present action dates back to July 19, 1882, the date of the death of Luis Passalacqua Costa. Until April 17, 1915 the administration of the common estate was in charge of Antonio Passalacqua Costa, who on that date rendered accounts of his actions, according to which the net capital of the brothers, surnamed Passalacqua Palmieri, Juan —appellee herein—Luis and Antonio, now their heirs—appellants herein—amounted to $48,379.77.[1] During these years the interested parties had made withdrawals in the

---

[1] The book value of this capital was determined as follows:

*Rural Properties:*

| | | |
|---|---|---|
| Soto farm | $1,300.00 | |
| Manuel Colón farm | 500.00 | |
| Dolores farm | 2,000.00 | |
| Jácana farm | 14,575.88 | $18,375.88 |

*Structures:*

| | | |
|---|---|---|
| ⅗ parts of zinc-roofed house | $3,300.00 | |
| ⅗ parts of concrete warehouse | 2,100.00 | $5,400.00 |

following amounts: Juan, $7,458.77; Antonio, $4,431.26; and Luis, $13,691.91.[2] With the passing of the years, of these property there only remained in the patrimony of the community the farm known as Dolores, an interest of three fifths in two structures located on José I. Quintón Street of the town of Coamo, and a tomb.

As a result of the death of Julia Palmieri, mother of the Passalacqua Palmieri brothers, and of the partition operations of the hereditary estate left upon her death as it appears from deed No. 21 of April 17, 1915, executed before Notary Manuel Tous Soto, the community existing among the brothers was enhanced by the adjudication to them of

| | | |
|---|---:|---:|
| *Accounts Receivable:* | | |
| Antonio Passalacqua Costa | $4,168.06 | |
| María Torres | 391.14 | |
| Donato Rivera | 97.00 | |
| Tomás Lara | 5.75 | $4,661.95 |
| | | |
| *Miscellaneous:* | | |
| 1 tomb | $360.00 | |
| Shares Central Vanina | 1,000.00 | $1,360.00 |
| | | |
| *Withdrawals by the Heirs:* | | |
| Luis Passalacqua Palmieri | $13,691.91 | |
| Antonio Passalacqua Palmieri | 4,431.26 | |
| Juan Passalacqua Palmieri | 7,458.77 | $25,581.94 |
| | | |
| | | $55,379.77 |
| *Less:* | | |
| Mortgage loan on Jácana farm in favor of Banco Crédito y Ahorro Ponceño | | $ 7,000.00 |
| *Total:* | | $48,379.77 |

[2] These advances were shown in the annual statements as accounts receivable and the corresponding adjustments were never made in the capital account.

property worth $27,000,[3] of which only the Emajagua and Guerrero farms are left at present.[4]

It appears, therefore, that since April 17, 1915 and until the date the action was brought the following property of the common capital was disposed of: 15 rural properties, six

---

[3] A statement of property adjudicated and the simulated valuation for division purposes is as follows:

### Rural Properties

| Identification in Deed of Division | Farm | Value | |
|---|---|---|---|
| No. 10 | Juan María (Meléndez) farm | $3,000.00 | |
| No. 11 | Emajagua farm | 2,000.00 | |
| No. 12 | Vicente Ortiz farm | 1,000.00 | |
| No. 13 | Alfaro farm | 2,000.00 | |
| Nos. 14) 15) 16) | Guerrero farm | 600.00 | |
| No. 17 | Perchas farm | 3,400.00 | |
| No. 18 | Nicolás Colón farm | 100.00 | |
| Nos. 19-25 | Monchito farm | 2,000.00 | |
| No. 26 | Vázquez farm | 2,000.00 | |
| No. 33 | Suárez farm | 533.60 | |
| Nos. 35-36 | Ortiz Robles farm | 921.23 | |
| No. 37 | Elías farm | 384.24 | |
| No. 31 | Atajo farm (interest of one half in naked ownership) | 1,228.63 | |
| No. 27 | Madrid farm | 2,000.00 | $21,167.70 |

### Structures

| | | |
|---|---|---|
| 1 one-story small house | $150.00 | |
| 1 carriage house | 75.00 | |
| 1 stable | 25.00 | |
| 1 outbuilding | 50.00 | |
| 1 house Pedro García | 200.00 | |
| Share in house of maternal inheritance | 521.60 | 1,021.60 |

### Miscellaneous

| | | |
|---|---|---|
| Shares of Central Vanina | $1,500.00 | |
| Shares of Luz Eléctrica Ponce | .50 | |
| Accounts receivable | 2,782.50 | |
| Other property | 527.70 | 4,810.70 |

| | | |
|---|---|---|
| Maternal Inheritance as of April 17, 1915: | | $27,000.00 |

[4] From plaintiff's exhibit 25, which is a certified copy of deed No. 192 executed before Notary Fernando Zapater Martínez on July 19, 1940, it appears that the interest adjudicated in the liquidation of the maternal

structures, $7,444.45 in accounts receivable, stock estimated at $2,500.50, and other property worth $527.70. Of all the transactions carried out we have knowledge only of the disposition of Juan María or Meléndez and Perchas farms which were sold to co-owner Antonio Passalacqua Palmieri on June 15, 1917 and January 21, 1924, for the prices of $7,508 and $3,400, respectively (Plaintiff's Exh. 13) ; the Madrid farm, sold to Antonio Serracante by private instrument of May 11, 1926, for a price which after rectification of the area amounted to $6,225 (Plaintiff's Exh. 22) ; and the Jácana farm, sold late in 1946 for an approximate net price of $34,500[5] (Plaintiff's Exhs. 16 and 39).

Until 1930 Antonio Passalacqua Costa, aided in these tasks by appellee Juan, was in charge of the administration of the common property. It was alleged that the accounts corresponding to this period from 1915 to 1930 were not available because the books showing the entries had been destroyed by the heirs of the administrator after the latter's death "as useless." From and after 1930 plaintiff-appellee performed some administration tasks.

In March 1959 Juan Passalacqua Palmieri filed in the Superior Court, San Juan Part, a complaint which he entitled "civil action" against his brother Luis and the heirs of his

---

inheritance in the naked ownership of Atajo farm and which was afterwards consolidated in ownership upon the death in 1920 of usufructuary Aquilino Torres Colón, was divided among the three brothers, the corresponding segregations having been made and recorded in the Registry of Property as separate and independent farms in the name of each co-owner. Reference is made to the deed of division of community "number seventy-four of April four before me," without stating the year of execution.

[5] In the testimony given by plaintiff Juan Passalacqua Palmieri reference is made to the sale of the Vázquez farm to Darío Santiago. This transaction was carried out by administrator Antonio Passalacqua Costa for the price of $2,500. He received as part of the price a house in the town of Coamo valued at $1,500, which was afterwards acquired by Antonio Passalacqua Palmieri. Deponent stated that he has not received his $500-share in this piece of real property (Tr. Ev. III, pp. 28–29).

It appears further that on March 30, 1924 and April 9, 1926 shares of Central Vanina were sold for $1,366.66 and $720, or a total of $2,086.66 (Plaintiff's Exh. 43).

562

predeceased brother Antonio, seeking an order for dissolution of the community of property and the refund to plaintiff of certain sums which were determined on the basis of a series of computations and operations which are set forth in detail in a document which was attached to the complaint. This document was prepared by an accountant on the basis of the information furnished by plaintiff himself. Subsequently, after the opening of the trial, the averments of the complaint touching the refund of amounts were amended in order to conform them to a new exhibit prepared *ad hoc* by another accountant on the basis of the testimony given and the 44 exhibits identified in the course of plaintiff's deposition, and which also contains the accountant's personal interpretation on the scope of the parties' actions. For some unexplained reason the trial court adopted in full the contents of this report despite the enormous gaps and obvious errors appearing on the face thereof, and rendered judgment for plaintiff sustaining all his claims. The unique judgment has the practical effect of depriving appellants of any participation in the common property, and if this were not sufficient, it orders them to pay huge sums to appellee.[6] At the request of defendant Luis Passalacqua Palmieri as well as of the heirs of Antonio Passalacqua Palmieri we issued writs of review.

---

[6] The judgment rendered reads as follows:

"For the reasons stated in the Findings of Fact and Conclusions of Law made on this date, which have been attached to the record and are made a part hereof, the court renders judgment sustaining the complaint and holding that the interest of co-owner Antonio Passalacqua Palmieri, now his heirs, in the community of property amounts to $38,415.84 and that he owes to co-owner Juan Passalacqua Palmieri the sum of $58,625.21; that the interest of co-owner Luis Passalacqua Palmieri in the community of property is $10,880.34 and that he owes to Juan Passalacqua Palmieri the sum of $36,007.84; and that the interest of co-owner Juan Passalacqua Palmieri in the community of property is $29,466.81.

"Defendants are hereby ordered to proceed to divide immediately the farms or real property which form part of the community of property in the proportion adjudicated hereinabove. Antonio Passalacqua,

1. In the petition for review interposed by Luis Passalacqua Palmieri it is expressly alleged that the trial court erred in ordering the immediate partition of the property which constitutes the assets of the community because (a) other persons who were not joined as parties in the action on partition are interested in some of the real property—the two structures situated on José I. Quintón Street of Coamo; and (b) assuming that the action exercised could be considered as an action for partition of the inheritance, the proper thing to do would be to appoint a commissioner in partition, with powers to set up the corresponding inventory, with the participation of all interested parties.

In *Marchese* v. *Marchese*, 81 P.R.R. 708, 715 (1960), we said that although both actions of division of the community known as *communi dividundo* and those of division of the estate, known as *familia erciscundae*, are essentially the same insofar as their object is to terminate a common ownership, both are governed by different rules. FERRANDIS VILELLA, *La Comunidad Hereditaria* 162 *et seq.* (Bosch ed., 1954) ; GAYOSO ARIAS, *Naturaleza y Desarrollo Procesal de la Acción "Communi Dividundo," Revista de Derecho Privado* 209 (1920). As to the former, the lawmaker has made provision in §§ 334 to 340 of the Civil Code, 1930 ed., 31 L.P.R.A. §§ 1279 to 1285;[7] as to the latter, and owing to the very nature of the estate which shows the necessity

now his heirs, is further ordered to pay to plaintiff Juan Passalacqua Palmieri the sum of $58,625.21, and Luis Passalacqua Palmieri to pay to plaintiff Juan Passalacqua Palmieri the sum of $36,007.84.

"The countercomplaint is dismissed in its entirety.

"The costs and litigation expenses are imposed on defendants, in equal parts, and they are further ordered to pay the sum of One Thousand Dollars ($1,000), in equal parts, for attorney's fees."

[7] For a complete analysis of these legal provisions and their interdependence with the provisions on division of inheritance, we recommend a reading of the article entitled *El Proceso de Disolución de la Comunidad* which appeared in *Revista de Derecho Procesal* 395-437 (1960), the author of which is the Spanish magistrate JOSÉ MARÍA REYES MONTERREAL. See, also, MAYNAR BARNOLAS, *Proceso de División de la Cosa Común*, 196 *Revista General de Legislación y Jurisprudencia* 312 (1954).

564

of special provisions to govern the same, *Trinidad et al.* v. *Sucn. of Trinidad et al.*, 19 P.R.R. 616, 624 (1913), he provided clear and specific rules in the Law of Special Legal Proceedings, § § 600 to 605 of the Code of Civil Procedure, 1933 ed., 32 L.P.R.A. § § 2621 to 2626,[8] *Lassús et al.* v. *Ducret et al.*, 26 P.R.R. 348 (1918). However, the hereditary community for the division of which it is necessary to appoint a commissioner in partition, in the absence of any agreement between the parties, has its origin in the state of indivision created among the heirs upon the death of the predecessor or testator. In the present case, although reference is repeteadly made to the property acquired by paternal and maternal inheritance, a careful examination of the facts shows that the division sought does not refer to a hereditary community. As to the Emajagua and Guerrero farms, it appears clearly that they were adjudicated to the co-owners in the division operations of the maternal hereditary estate, and that the state of indivision was voluntarily created by the parties upon accepting joint and undivided adjudications in the formation of the share which corresponded to them. As respects the Dolores farm and the joint interests in the urban property, the situation is somewhat more uncertain due to the absence of primary evidence on the origin of the common title. Although plaintiff and his accountants refer continuously to its origin as derived from the paternal inheritance, the inference drawn from the documentary evidence presented is that, as in the former case, the present state was created by the will of the parties and not by virtue of a hereditary indivision. The inference is that upon the death of the common trunk in 1882, he was succeeded by the three brothers involved in this litigation as well as by two other brothers named Julio and Carlos. This being so, in order that the present co-

---

[8] See, in general, JERÓNIMO GONZÁLEZ, *La Comunidad Hereditaria*, 7 *Revista Crítica de Derecho Inmobiliario* 174 (1931); V BORRELL Y SOLER, *Derecho Civil Español* 448 *et seq.* (1954); 6–1 CASTÁN TOBEÑAS, *Derecho Civil Español, Común y Foral* 251 *et seq.* (7th ed. 1960); VII MANRESA, *Comentarios al Código Civil Español* 686 *et seq.* (7th ed. 1955).

owners could have come to the community situation existing among the three of them only, a division of the estate of the paternal inheritance must have necessarily been made prior thereto. This conclusion is buttressed precisely by the fact that the remaining interest of two fifths of the urban real property corresponds to the heirs of Julio and Carlos. Furthermore, plaintiff's exhibit 1, which is the ledger of the accounts of administrator Antonio Passalacqua Costa, shows that the annual trial balances appear in the name of "the Heirs of L. Passalacqua" up to July 31, 1901 (folio 163), and from that day on and until the final balance of April 17, 1915 the balances appear in the name of "Passalacqua Hnos. (the three)" (folio 164), and personal accounts entitled "Carlitos' Capital" (folio 146) and "Julio's Capital" (folio 147). The presumption to be drawn from all this indicia is that the division of the paternal inheritance was made some time in 1901. Hence, it is not the question of a division of a community requiring the appointment of a commissioner in partition, but an action of *"communi dividundo."* *López* v. *López*, 14 P.R.R. 634 (1908).

■ Such being the presumption, all the co-owners should participate, *Central Pasto Viejo* v. *Roig*, 33 P.R.R. 436 (1924), in order that the adjudication ordering the division may not be ineffective, *Suc. of Collazo et al.* v. *Borrás et al.*, 26 P.R.R. 424 (1918); *Fernández* v. *Gutiérrez del Arroyo*, 10 P.R.R. 59 (1906). As we have seen, what the parties own in common in the two pieces of urban property is only an interest of three fifths, the remaining portion belonging to other persons who did not appear as parties. The need for joining them in the action and giving them an opportunity to be heard becomes even greater in the instant case in which apparently the properties involved are essentially indivisible,[9] and in connection with which plaintiff has made an arbitrary

---

[9] See *López* v. *Succession of Candelario*, 27 P.R.R. 681 (1919), on the need to allege lack of agreement between the interested parties in order to adjudicate the thing held in common to one of the co-owners.

valuation without expert evidence on its market value and supported only by the appraisal made for property tax purposes.[10] It was error to order the immediate division of these interests in the urban real property. However, the order for the division of the agricultural parcels is warranted.

2. The consequence of the trial court's action in adopting the accountant's report which was offered and admitted as plaintiff's exhibit 45 is to hold that the co-owners' interest in the Dolores farm and in the joint ownership of the two pieces of urban property was altered as a result of the liquidation made by the administrator on April 17, 1915. After establishing that the outstanding capital on that date amounted to $48,379.77, including as element of the asset the withdrawals made by the heirs and without any other basis than a mere mathematical operation, it is concluded that the shares in the common estate have been fixed as follows:

| Heir | Share | Withdrawals | Balance | Share in Balance |
|------|-------|-------------|---------|------------------|
| Luis Passalacqua | $16, 126. 59 | 13, 691. 91 | 2, 434. 68 | 11% |
| Antonio Passalacqua | 16, 126. 59 | 4, 431. 26 | 11, 695. 33 | 51% |
| Juan Passalacqua | 16, 126. 59 | 7, 458. 77 | 8, 667. 82 | 38% |

This is the basis claimed to be adequate for the liquidation of accounts among the co-owners and for the division of the community. And it is precisely the party mostly favored by this improvised formula—Antonio's heirs to whom a share of more than one half is assigned—who challenges the result obtained.

It is sought to justify this determination by the fact that the three co-owners signed at the bottom of the ledger entry

---

[10] It is possible that the trial court, anticipating that the effect of its judgment was the adjudication of all the property to the moving party, did not stop to examine this question closely. Anyway, the scope of its pronouncements could not go beyond ordering the division sought and recognizing the credits which in its opinion corresponded to plaintiff, unless an anticipated execution of this aspect of the liquidation of accounts among the co-owners was intended within the same action.

entitled "Balance of the books of the three Passalacqua Palmieri brothers as of April 17, 1915, *for delivery of the accounts.*" In fact it was so, but no significance can be attached to this act other than the acceptance of the *accounts rendered* by the administrator, but never that of altering the equal shares which the three brothers had in the common property. The subsequent acts of the parties confirm our conclusion. When the Jácana farm which stands out in the common assets was sold, the interested parties divided the net price among themselves in equal shares. Plaintiff himself says that "I then gave each of them one third according to the share of the property claimed to be in equal parts." (Tr. Ev. IV, p. 143.) The lease rental from the same farm was divided equally (Tr. Ev. IV, p. 143). And in different deeds involving that farm, executed subsequent to 1915, the fact is always admitted that one third corresponds to each one of the co-owners (Defendants' Exh. C). On the other hand, plaintiff himself stated that this ledger balance covered the "rendition of his accounts (Antonio Passalacqua Costa) as tutor." (Tr. Ev. I, p. 7.) If it was intended to change the joint system of shares, why was not the corresponding deed executed?[11] It is at this time, when suspicion and distrust are the prevailing features in the relationship among the co-owners, thus making real the affirmation of the old *"Communio est mater discordiarum,"* that this interpretation of the facts is improvised.

We agree that there is no evidence of any kind to support this finding of the trial court and that, as respects these estates which originally formed part of the paternal in-

---

[11] The suppression of the notarial document mentioned in the entry made at folio 238 of the Ledger has called our attention. It reads as follows: "Capital of the three as of the Outgoing Balance Sheet. Amount and balance of this Capital account which, according to the Statement or Inventory of this date, was delivered to the interested parties named hereinbelow, *for the purposes of the notarial document of this day* executed before Manuel Tous Soto of Ponce ('I believe No. 20' is interpolated) closes this accounting made by me."

heritance, the situation existing among the parties is that of a community with identical share for each.

■ 3. The other error assigned is the aspect of the liquidation of the accounts among the co-owners. According to the judgment copied in footnote 6, the trial court, adopting once again the report which constitutes plaintiff's exhibit 45, concluded that appellee Juan was a creditor of his brother Antonio in the sum of $58,625.21 and of Luis in the sum of $36,007.84. We have already seen in the discussion of the previous error that the report fails to show adequately the distribution to be made of the income accruing from the estates which were originally part of the paternal estate. The seed of the incorrectness of the rendition of accounts appears in the very core of the report in which it is asserted that:

". . . owing to the fact that the accounting books showing all the individual transactions made by the brothers Luis, Antonio and Juan Passalacqua Palmieri in connection with the property of the paternal and maternal community corresponding to the years 1915 to 1930 were burned, it is impossible to determine the nature of such transactions, with the exception of those carried out through Juan Passalacqua Palmieri, one of the co-owners, who helped his uncle Antonio Passalacqua Costa in the administration of the property of the community. Furthermore, owing to the fact that the accounting books were burned, it is impossible to determine the transactions made in those years by administrator Antonio Passalacqua Costa in connection with the property of the paternal and maternal community."

However, despite such conclusive admission, further steps are taken and a statement of receipts and expenditures is fabricated worthy of Gonzalo Fernández de Córdova. For that purpose, and in the absence of books, *only* those transactions which remained alive in plaintiff's recollections are taken into account, without further verification than his mere affirmation and which by happy coincidence for himself are translated into charges for defendants. It is significant

that plaintiff himself in his testimony said that these amounts which were drawn by the other two co-owners were derived from community income retained by uncle Antonio, administrator until 1930, and which he distributed among the interested parties. Plaintiff himself stated it this way: "Antonio Passalacqua Costa kept it in order to give it to us as we needed it" (Tr. Ev. I, p. 16). However, the advances were made in a very queer way, as explained by Juan (Tr. Ev. I, p. 19):

"What share or out of what share did your two brothers enjoy?

Luis and Antonio Passalacqua Palmieri?

Yes.

Every time they needed money, they asked me for it.

And you gave it to them.

And I sent it to them.

You gave it to them in cash, by check or in securities?

Almost all by checks."

We say queer because this is the only version which permits the presentation in evidence of a great number of checks issued by plaintiff in favor of defendants with the passing of all these years, without stating on what account.

The amount accruing from the disposition of the rural property and other property which formed part of the common capital nor the income accruing either from rents or from the administration of these farms until the same ceased to be part of the common patrimony were not accounted for to satisfaction, despite the fact that it is unquestionable that the burden of proof rested on the moving party. Only the transactions Juan remembers, "those made through Don Juan," were taken into account, and when on cross-examination he is pressed upon these other data of which he must have some knowledge or information, he takes refuge in the convenient joker of the destruction of the books, *cf. Colón* v. *Secretary of the Treasury,* 85 P.R.R. 681 (1962), and of his failing memory. With evidence of this nature the frame-

work of which rests on such incomplete and fragmented bases, we can not uphold the judgment rendered by the trial court. In *Vilanova* v. *Secretary of the Treasury*, 83 P.R.R. 72 (1961), in which it was sought to apply the net-worth method for the purpose of determining a taxpayer's income, we said that the capital at the commencement of the taxable period should be established clearly and adequately by competent evidence, that is, it should rest on reasonable bases and not on mere conjectures. Similarly, and by analogy, we can not ascribe to defendants such serious responsibility as that represented by the pronouncements of the judgment relative to the liquidation of accounts, relying on fragmentary recollections and which by coincidence are always favorable to the moving party. *Cf. Atlas Products Corp.* v. *Arroyo*, 85 P.R.R. 96 (1962).

However, if the lack of information referred to in the preceding paragraphs were not sufficient, the report also contains other obvious errors such as failure to consider among the elements of the assets certain income established by plaintiff's evidence. Where are the moneys received from the sale of Meléndez and Perchas farms shown? And the $3,500 obtained in the execution of the judgment rendered against Baltazar Mendoza, lessee of the Jácana farm? And the mortgage loan contracted with Manuel González to be advanced to Luis in order to pay Franceschi y Cía. and, of course, is charged to defendant's account? This is sufficient not to give any probative value to that report as respects the liquidation of accounts for the period comprised between 1915 and 1930.

However, there is sufficient information in the evidence to enable us to reconstruct the accounts as of 1930. In this connection, it is well to note that the evidence does not contain the defect of uncertainty which we have attributed to the evidence on the accounts for the period between 1915 and 1930, and to which the trial court nonetheless gave credit.

Taking the same as a basis and subject to minor rectifications which might be admissible, it may be asserted that during the period comprised between January 1, 1930 and May 31, 1952,

(A) The common property yielded, or should have yielded, the following amounts:

| | | |
|---|---|---|
| 1. Chargeable to Antonio Passalacqua Palmieri | | $12,764.75 |
| a) Lease of Dolores farm from January 1, 1930 to May 31, 1952 | $6,725.00 | |
| b) Lease of Guerrero farm from January 1, 1930 to May 31, 1952 | 3,362.50 | |
| c) Fruits produced by Emajagua farm during the years 1946–47 to 1949–50 (Plaintiff's Exh. 8) | 2,677.25 | $12,764.75 |
| 2. Chargeable to Juan Passalacqua Palmieri | | $16,078.16 |
| a) Lease of Jácana farm from October 24, 1932 to December 31, 1946 | $23,475.00 | |
| b) Lease of Emajagua farm from January 1, 1930 to December 31, 1945 | 5,400.00 | |
| c) Lease of a three-fifths interest in two pieces of real property situated on José I. Quintón Street [12] | 7,313.80 | |
| d) Undistributed difference of the selling price of Jácana farm | 153.71 | |
| Less: | | |
| a) Interest paid as of January 1930: | | |
| Antonio Quilinchini | $4,666.66 | |

[12] In order to arrive at this sum, there were taken into consideration the rents received or to be received as of January 1, 1930, totalling $12,189.67, distributed as follows: Francisco Anselmi, $2,025; Luis Colón, $592; Dr. Domínguez, $372.50; Selective Service, $165.33; Higrade H. Casting Co., $270; Manuel Cruz, $1,912.50; O.P.A., $616; Paquillo Caratini, $138; Juan Passalacqua, $5,778.34; Popular Party, $180; and Luis R. Palmer, $140.

Of this sum $4,875.87 correspond to the co-owners of the remaining two-fifths.

| Marcos Vecchini | 6,346.66 | |
| Edward Junghans | 3,522.22 | $14,535.54 |

b) Taxes paid corresponding to taxable years as of 1930:

| | | |
| Jácana farm | $2,332.52 | |
| Emajagua farm | 591.38 | |
| Atajo farm | 1,106.15 | |
| Urban property (60 per cent of $1,400.21) | 840.12 | $4,870.17 |

c) Repairs, urban property (60 per cent of $1,431.08) — 858.64 $16,078.16

(B) From January 1, 1930 to May 31, 1952 Juan Passalacqua Palmieri made advances to his brothers:

a) To Luis Passalacqua Palmieri,

| | | |
| as per exhibit 43 | $5,882.17 | |
| as per exhibit 33 | 500.00 | |
| as per exhibit 40 | 1,500.00 | |
| as per exhibit 35 | 500.00 | $8,382.17 |

b) To Antonio Passalacqua Palmieri,

| | | |
| as per exhibit 13 | $1,281.25[13] | |
| as per exhibit 14 | 72.96 | |
| as per exhibit 15 | 134.75 | |
| as per exhibit 25 | 637.40 | |
| as per exhibit 42 | 654.44 | $2,780.80 |

■■ Before considering the final liquidation, we say that we have not overlooked the defense of prescription interposed by appellants, the children of Antonio Passalacqua Palmieri, in connection with the collection of the lease rental from Dolores and Guerrero farms. It is true that § 1866 of the Civil Code, 1930 ed., 31 L.P.R.A. § 5296, provides that

---

[13] We have eliminated from this exhibit, which is a statement of accounts, the item of $8,500, the selling price of Burgos farm, received by Antonio Passalacqua, in the understanding that the preponderance of the evidence establishes that this particular farm belonged to him. That is why we have charged to him the sum of $654.44, advanced by Juan to pay certain expenses connected with the farm.

actions to demand the fulfilment of the obligation to pay rents prescribe in five years. *Blanch* v. *Heirs of Del Moral*, 57 P.R.R. 23 (1940) ; *Abarca* v. *Bank of Nova Scotia*, 46 P.R.R. 914 (1934), but construing correctly the relationship between the parties, the action exercised herein is rather an action for the rendition of accounts the prescriptive period of which, as held in *Serrano* v. *Talavera*, 65 P.R.R. 411 (1945), is 15 years, according to the provisions of § 1864 of the same Code, 31 L.P.R.A. § 5294, for personal actions for which no prescriptive period is fixed by law. This being so, and considering further that there is sufficient evidence in the record to affirm that reciprocal demands for rendition of accounts are not infrequent in the correspondence had between the parties during this entire period, the defense of prescription can not prosper.

The result of the operations set out above shows that a net sum of $28,842.91 corresponds to the co-owners, or $9,614.30 to each. Juan, plaintiff herein, after paying the legitimate administrative expenses such as taxes, interest and repairs, received a net amount of $16,078.16 out of which he made advances of $8,382.17 to Luis and of $2,780.80 to Antonio. He therefore retained $4,915.19 only, so that there is a balance of $4,699.11 standing to his credit.

However, for the purposes of doing full justice to the parties and in view of the conclusion reached herein-above upholding the existence of equal shares among the co-owners in the property existing in 1915, it is fair and reasonable to take into account in the final liquidation the sums which uncle Antonio had advanced to them, with the express consent of the co-owners, until April 17 of that year in which the liquidation was made. Since the total advances at that time amounted to $25,581.94, the synoptic picture of the final liquidation which is attached to this opinion as exhibit A shows that the sum of $5,767.65 is owing to defendant-appellee and must be paid to him as follows: $3,932.45 by his brother

Luis and $1,835.20[14] by the heirs of Passalacqua Luna, which are precisely the amounts which the latter received in excess in the liquidation.

The judgment rendered by the Superior Court, San Juan Part, on June 29, 1960 will be modified in accordance with the terms of this opinion, and as thus modified it will be affirmed with a pronouncement eliminating the sum awarded for attorney's fees.

### EXHIBIT A
#### LIQUIDATION OF PASSALACQUA COMMUNITY

| | Share corresponding up to 1915[1] | Share corresponding up to 1930-1952 | Total Share | Received up to 1915 | Received 1930-52 | Total Received | |
|---|---|---|---|---|---|---|---|
| JUAN | $8,527.31 | $9,614.30 | $18,141.61 | $7,458.77 | $4,915.19 | $12,373.96 | (Credit) $5,767.65 |
| ANTONIO | 8,527.31 | 9,614.30 | 18,141.61 | 4,431.26 | 15,545.55[2] | 19,976.81 | (Debit) $1,835.20 |
| LUIS | 8,527.32 | 9,614.31 | 18,141.63 | 13,691.91 | 8,382.17[3] | 22,074.08 | (Debit) $3,932.45 |

[1] The total advances up to that date, $25,581.94, divided among the three co-owners.
[2] Retained as per paragraph A-1, $12,754.75, plus the amount advanced by Juan, $2,780.80.
[3] Amount advanced to him by Juan.

---

[14] From this sum of $1,835.20 there should be deducted $277.76 which Antonio delivered to Juan in the liquidation of the coffee from Emajagua farm in the years 1946–1950, as it appears from plaintiff's Exh. 8.